Argued December 15, 1915, reversed January 4, rehearing denied January 25, 1916.

## WEBB *v.* ISENSEE.

(153 Pac. 800.)

**Frauds, Statute of—"Contract not to be Performed Within a Year" Void for Want of Consideration.**

1. Under Section 808, L. O. L., any agreement which by its terms is not to be performed within a year from the making, or an agreement for the leasing for a longer period than one year, is void, unless, some note or memorandum thereof, expressing the consideration be in writing and subscribed by the party to be charged or his authorized agent. An agreement entered into January 31, 1912, between the lessor in a lease expiring February 15, 1913, and certain third parties who were strangers to the original lease, to the effect that in case such third parties were in possession of the premises at the expiration of the term, they might renew the lease for five years, was void as an agreement not to be performed within a year, and not expressing any consideration whatever.

**Landlord and Tenant—Agreement for Renewal of Lease—Unilateral Contract.**

2. A memorandum executed by a lessor and certain third parties agreeing that if such third parties were in possession of the leased premises at the time the lease expired they might have a renewal of the same for a term of five years, there being no covenant that said third parties were to do anything, *held* a unilateral contract and void.

[As to covenants for renewal of lease, see note in 123 Am. St. Rep. 460.]

**Landlord and Tenant—Between Strangers must be Consideration for Renewal of Lease.**

3. The covenant in the original lease to pay the rent reserved did not constitute a sufficient consideration to support the agreement, since the parties other than the lessor were strangers to the lease; even if they were holders of the lease and subject to its covenants, they would be already bound to pay the rent, and this stipulation could not be a consideration for any new agreement.

**Landlord and Tenant—Construction of Agreement for Renewal of Lease.**

4. Where at the expiration of the lease such third parties were not in possession of the leased premises, but the same were in the possession of and occupied by plaintiff, the assignee of said third parties, therefore no right of renewal accrued to plaintiff by reason of such agreement.

**Action—Consolidation of Two or More Suits or Actions upon Proper Motion.**

5. Section 526, L. O. L., provides whenever two or more actions or suits are pending at one time, between the same parties and in the same court, upon causes which might have been joined, the court may, upon the motion of defendant, order the same to be consolidated, but the court cannot of its own motion order such consolidation.

**Action—Nature of Causes That can be Consolidated.**

6. Under Section 526, L. O. L., only causes that could have been joined are to be consolidated, therefore plaintiff's suit for a renewal of a lease could not be consolidated with a chose in action existing in favor of defendant for the recovery of unpaid rent or for the recovery of the possession of the premises.

**Action—Venue must be Laid in Same Court in Order to Consolidate.**

7. Under the express provision of Section 526, L. O. L., it is error for a court to consolidate an action pending in another tribunal.

From Multnomah: HENRY E. McGINN, Judge.

Department 2.　Statement by MR. JUSTICE BURNETT.

This is a suit by Lillie T. Webb against William Isensee, consolidated with two actions at law by de-

fendant Isensee against plaintiff. The following are the facts:

On October 27, 1909, William Isensee, as owner thereof, leased to C. H. Thoren and Emma A. Thoren an apartment house, then under construction, for a term of three years, to commence at the completion of the building, with the privilege of an extension of one additional year. The structure appears to have been finished and the occupation began February 15, 1910. The rent reserved was $400 per month for the first year and $450 per month for the remainder of the term payable in advance.

On January 31, 1912, Isensee, Walter L. Webb and Evelyn A. Webb, who for convenience are designated as "the Webbs" executed a writing in these terms:

"'Portland, Oregon, January 31st, 1912.

"It is hereby agreed by and between the parties hereto that if Walter L. Webb and Evelyn A. Webb are in possession of the premises described in the hereto attached lease, at the expiration of the same, then, and in that event they are to have a renewal of the same for a term of five years; and if the parties hereto cannot mutually agree upon the monthly rental thereto, they shall submit the same to arbitration, the terms of such arbitration to be binding on all parties hereto; each party to choose one arbitrator and they to choose the third.

"[Signed]     WM. ISENSEE.
"WALTER L. WEBB.
"EVELYN A. WEBB."

The instrument was also signed by two subscribing witnesses. On the following day there was indorsed upon the original lease the following:

"For value received we hereby transfer, sell and assign the within lease to Walter L. Webb and Evelyn A. Webb, February 1, 1912.

"[Signed]     C. H. THOREN.
"EMMA A. THOREN."

It appears that Isensee consented to the assignment of the lease by the Thorens to the Webbs. On July 20, 1912, the Thorens consented to the transfer of the lease from the Webbs to the plaintiff, Lillie T. Webb, and on the next day but one in the same month the defendant herein also agreed to the same. The plaintiff alleges that, in pursuance of the assignment of the lease to her, she entered into possession of the premises, paid the monthly rental reserved to the end of the term on February 15, 1914, and is still in possession thereof. Her complaint then contains these averments:

"That at and before the expiration of said lease plaintiff sought the defendant and endeavored to induce him to execute a new lease to her according to the said agreement at some monthly rental, to be mutually agreed upon between them, or to be so fixed by arbitration, but defendant failed, neglected and refused, and still fails, neglects and refuses to execute any lease to said premises to the plaintiff, and avoids any conference with her and refuses to discuss the matter with her, and refuses to arbitrate the rental, or to conform to any of the provisions of the said lease, or to give the plaintiff any rights thereunder, plaintiff having conformed to all the provisions of said lease. That plaintiff is now, and always has been ready and willing to negotiate with defendant and to enter into a lease with defendant according to his said agreement, for the said premises, and is able, ready and willing, to pay to defendant a fair and reasonable monthly rental for said premises if the defendant will execute a new lease according to the terms of said agreement. And plaintiff further alleges that if such monthly rental cannot be so mutually agreed upon, then and in that event plaintiff is ready and willing to submit the matter of said rental to arbitration according to the conditions of said agreement, and to abide by the decision of said arbitrators."

Her prayer is for a decree requiring the defendant to make and execute to the plaintiff a lease of the premises according to the terms and conditions of the original lease and agreement, and for further relief.

A general demurrer to the complaint was overruled. The answer denied the statements of the latter pleading last above quoted; recites the instrument dated January 31, 1912, signed by Isensee and the Webbs, and says that the latter vacated the premises during the month of July, 1912, and were not in the occupancy or control thereof at the expiration of the lease, and that the plaintiff retains the possession of the building refusing to pay rent or to vacate the property. A further answer contends that the instrument executed by Isensee and the Webbs is unilateral and void because it is without consideration, and does not comply with the statute of frauds in specified particulars. The new matter of the answer was materially traversed by the reply.

After the commencement of this suit Isensee began an action in the same court against Lillie T. Webb to recover $450 as rent of the premises for the month beginning February 15, 1914, in which the plaintiff here answered denying that the rental was as claimed by Isensee, and setting up as a further defense the facts alleged in her complaint in this suit. The court consolidated the action with the suit. After the institution of the litigation to recover rent the defendant here commenced in the District Court of Multnomah County for the Portland District an action against the plaintiff here in forcible entry and detainer to recover the possession of the premises. After that cause was at issue in that court, the Circuit Court of its own motion ordered that the same be discontinued, that no further proceedings be had therein, and that the matter

be consolidated and tried with the suit in equity pending in the Circuit Court, thus combining the one suit of plaintiff with the two actions of Isensee.

On August 14th, the court passed a decree substantially according to the prayer of the complaint in the suit fixing the rent at $325 per month. On October 1st a further order was entered in the Circuit Court denying the motion of Isensee to be heard and to introduce evidence in the forcible entry and detainer action, and deciding that defendant in that action go thence without day, and that Isensee was not entitled to the restitution of the property. Later, on October 6, 1914, that court further ordered that Isensee take nothing in his action for rent. He has appealed, and assigns as error almost everything that the court did in all the litigation. REVERSED WITH DIRECTIONS.

For appellant there was a brief over the names of *Messrs. Lewis & Lewis* and *Mr. Cicero M. Idleman,* with an oral argument by *Mr. Andrew T. Lewis.*

For respondent there was a brief over the name of *Messrs. Schmitt & Schmitt,* with an oral argument by *Mr. G. G. Schmitt.*

MR. JUSTICE BURNETT delivered the opinion of the court.

1. The contention centers around the proper legal construction to be given to the writing of January 31, 1912, signed by Isensee and the Webbs. It must be remembered that this document, although it appears to be attached to the original lease to the Thorens, was dated prior to the assignment of the latter by them to the Webbs. The plaintiff claims that the paper of January 31, 1912, constitutes one of the conditions of the original lease of which she is assignee,

entitled to enforce the same as thus amended and so obtain a new lease. At the time of the execution of the instrument by Isensee and the Webbs the latter were strangers to the lease, and hence any agreement they might make would necessarily depend upon a separate consideration of its own. The term did not expire until February 15, 1914. The convention between the Webbs and Isensee, therefore, was not to be performed in any event within the year next ensuing. Our statute of frauds, as embodied in Section 808, L. O. L., declares thus:

"In the following cases the agreement is void unless the same or some note or memorandum thereof, expressing the consideration, be in writing and subscribed by the party to be charged, or by his lawfully authorized agent; evidence, therefore, of the agreement shall not be received other than the writing, or secondary evidence of its contents, in the cases prescribed by law: 1. An agreement that by its terms is not to be performed within a year from the making thereof. * * 6. An agreement for the leasing, for a longer period than one year, or for the sale of real property, or of any interest therein."

2. No financial or other consideration is expressed in the instrument in question. There are no covenants on behalf of the Webbs to take a lease of the property, or to do or suffer anything whatever to correspond with the extension offered by Isensee. At the best the instrument is unilateral. It does not profess to bind the Webbs. Under the statute and within the reasoning of *Corbitt* v. *Salem Gaslight Co.*, 6 Or. 405 (25 Am. Rep. 541, note), the instrument is void and of no force as a contract, because it is not to be performed within a year, and does not express any consideration.

3. It is urged that the covenant in the original lease to pay the rent therein reserved constituted a suffi-

cient consideration to support this latter instrument. This is unsound for at least two reasons. As pointed out, the Webbs were strangers to the lease when they signed the document of January 31st. Further, even if they had then been the holders of the lease and subject to its covenants, they already would have been bound to pay the rent, and this stipulation would not be a consideration for any new agreement. It is very true that if an option to extend the term for five years had been incorporated in the original lease, the covenant to pay rent would have been a supporting consideration, and this is the precept laid down in such cases as *House* v. *Jackson,* 24 Or. 89 (32 Pac. 1027); *Mitchell* v. *Taylor,* 27 Or. 377 (41 Pac. 119); *Clarno* v. *Grayson,* 30 Or. 111 (46 Pac. 426); *Olympia Bottling Works* v. *Olympia Brewing Co.,* 56 Or. 87 (107 Pac. 969); *Kingsley* v. *Kressly,* 60 Or. 167 (111 Pac. 385, 118 Pac. 678, Ann. Cas. 1913E, 746)—all cited by the plaintiff here. These precedents, however, are not applicable to the present juncture, because the two documents are separate transactions not between the same parties, and the Webbs, when they signed the later one, were strangers to the consideration supporting the first one.

The principle is that when a consideration moving from one party is recited in an instrument as supporting covenants to be performed by the other party, it has spent its actuating force, and cannot be relied upon to support subsequent independent agreements even among the parties to the original contract. The doctrine is thus declared in 9 Cyc. 349:

"The promise of a person to carry out a subsisting contract with the promisee or the performance of such contractual duty is clearly no consideration, as he is doing no more than he was already obliged to do, and

hence has sustained no detriment nor has the other party to the contract obtained any benefit."

4. Moreover, on the hypothesis that this was in its origin a binding agreement, yet, as a condition upon which the lease would be extended, it was specified that the Webbs should be in possession of the premises at the expiration of the original term. When the time came, however, the condition was not fulfilled. They were not in possession. On the contrary, the property was occupied by another party, the plaintiff here. For all these reasons no right or privilege accrued to the plaintiff in this suit by virtue of the writing of January 31, 1912, executed by Isensee and the Webbs. It is not necessary to consider whether the defendant had a right to choose his tenant or to determine whether this was a personal covenant or one running with the land. As a matter of law, the plaintiff is clearly without right to a renewal of the lease.

5. It remains only to consider the *status* of the actions at law already mentioned. It is said in Section 526, L. O. L.:

"Whenever two or more actions or suits are pending at one time, between the same parties and in the same court, upon causes which might have been joined, the court may, upon the motion of the defendant, order the same to be consolidated."

As by the terms of the statute such procedure must be taken "upon the motion of the defendant," it cannot be invoked by the court of its own motion.

6. Again, only causes which might have been joined are to be consolidated. It is impossible that the plaintiff could have joined her cause of suit for a renewal of lease with a chose in action existing in favor of the defendant for a recovery of unpaid rent or for the recovery of the possession of the premises.

7. Especially is the order of the court erroneous as to the action pending before another tribunal.

The result is that the decree and orders of the Circuit Court are reversed, the plaintiff's suit dismissed, and the actions at law restored to the situation in which they stood at the time the orders for consolidation were made.                    REVERSED WITH DIRECTIONS.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE HARRIS and MR. JUSTICE BEAN concur.

MR. JUSTICE EAKIN did not sit.