Argued and submitted December 15, 1980, affirmed February 17, reconsideration denied March 26, petition for review allowed April 21, 1981 (290 Or 853)

WATZIG,
*Appellant,*
*v.*
TOBIN et al
*Respondents.*

(No. 19-221, CA 17350)

623 P2d 1121

Raymond J. Conboy, Portland, argued the cause for appellant. With him on the briefs were Garry L. Kahn, Raymond J. Conboy, and Pozzi, Wilson, Atchison, Kahn & O'Leary, Portland.

Larry Dawson, Portland, argued the cause and filed the brief for respondents.

Before Gillette, Presiding Judge, and Roberts, Judge, and Campbell, Judge Pro Tempore.

CAMPBELL, Judge Pro Tempore.*

---

*Appointed to Supreme Court December 1, 1980.

## CAMPBELL, J.  PRO TEMPORE

This is an action to recover damages for personal injuries suffered by plaintiff when her automobile struck a cow owned by defendants. The jury found both parties to be 50 percent negligent and assessed plaintiff's total damages at $10,500. Plaintiff appeals, contending that the award was for special damages only and therefore the court erred in accepting the verdict. Plaintiff also claims the trial court erred in refusing to give her instructions on statutory negligence and on res ipsa loquitur and that the court gave an erroneous instruction on lookout. We affirm.

The collision occurred on a cloudy night on the coast highway just north of Tillamook. Plaintiff saw one cow on the side of the road and slowed down to go around it. Shortly thereafter her car struck another cow, defendants' Holstein. Plaintiff's witnesses testified that the Holstein was predominantly black, while defendants' daughter testified that the cow was predominantly white.

Defendants were away on vacation at the time of the accident and had left their dairy in charge of their daughter, a college student majoring in dairy technology, and her younger siblings. According to the daughter, there were three gates in the barnyard, two of which were permanently and securely tied shut. She testified that the third gate was so securely clamped that she "doubted a cow would be able to open it." She said she had checked on the gates by observing them from a window shortly before going to bed, and had seen nothing out of the ordinary. Her younger brother testified that he had "hurriedly" checked the barnyard gate after milking that night and, while slightly intoxicated, had checked the gate a second time after he came home from a party.

As a result of the collision with defendants' cow, plaintiff suffered serious injuries. Plaintiff prayed for general damages of $225,000 and $10,726.15 special damages for medical expenses and lost earnings.

Plaintiff's first assignment of error is that the trial court should not have accepted the jury's unsegregated verdict which assessed plaintiff's total damages at $10,500. Plaintiff argues that since her claimed special damages

exceeded $10,500, the jury must have awarded special damages only or, at most, a nominal amount of general damages.

■■ An award for special damages only would be improper in this case. *Wheeler v. Huston,* 288 Or 467, 605 P2d 1339 (1980); *Eisele v. Rood,* 275 Or 461, 551 P2d 441 (1976). However, we cannot say that the verdict here was solely an award of special damages. It is above the amount of specials which both parties stipulated to. Besides, the award would be upheld even if it were only for the exact amount of the claimed specials. As the Supreme Court recently stated in *Wheeler:*

> "Such an award may reflect a decision by the jury not to award the total amount of the claimed special damages, but rather to award part of the claimed specials and some general damages. The mere identity between the award and the specials would not exclude a conclusion that the verdict included an award for general damages." *Id.* at 479.

■■ Plaintiff also argues, however, that even if the award is in part general damages, the verdict is still improper because the award of general damages could be as little as $242 which plaintiff urges us to characterize as "nominal" in view of the fact that she suffered serious injuries.[1] While it is true that the question of whether damages are nominal or substantial is an issue of law which must be decided on a case by case basis, *Wheeler v. Huston, supra; Frazee v. Brazda,* 239 Or 624, 627, 399 P2d 346 (1965), "nominal" damages, although relative, are generally described as a trivial sum of money. *Baden v. Sunset Fuel,* 225 Or 116, 357 P2d 410 (1960). Although that part of the jury award that may be characterized as general damages is certainly not generous, we cannot characterize an amount anywhere from $250 to $3,000 as "nominal." Therefore, the trial court did not err in accepting the verdict.

---

[1] Plaintiff arrived at the $242 figure for general damages by adding $7,543.75, the amount the parties stipulated to for medical expenses, to $2,714, the amount she claimed for lost wages, and subtracting that sum from $10,500, the amount of the total damages assessed by the jury. The jury might, however, have decided to make no award for lost wages or to award a smaller portion than plaintiff asserted she sustained for lost wages since the amount was disputed. Therefore, the amount of general damages could be as much as $10,500 less the stipulated medicals, or around $3,000.

■ Two of plaintiff's remaining three assignments of error regard the court's refusal to instruct the jury to consider the rules of statutory negligence and res ipsa loquitur in determining defendants' negligence. Plaintiff also assigns as error the court's instruction on plaintiff's contributory negligence as to lookout. Since the jury found defendants 50 percent negligent, defendants argue that any error the court may have made was "cured" by the verdict in favor of plaintiff. However, the instructions given or refused might have affected the percentages of fault found by the jury, and therefore we find it necessary to reach plaintiff's remaining assignments of error. *James v. Carnation Co.,* 278 Or 65, 76-77, 562 P2d 1192 (1977); *Beglau v. Albertus,* 272 Or 170, 536 P2d 1251 (1975); *Tow v. K-Mart,* 43 Or App 341, 602 P12d 1111 (1979); and *see, e.g., State ex rel Redden v. Discount Fabrics,* 289 Or 375, 615 P2d 1034 (1980); *Reid et al v. Reid,* 219 or 500, 348 P2d 29 (1959).

■ Plaintiff contends that the trial court erred in refusing to instruct the jury that the presence of defendants' cow on the highway, in violation of ORS 607.510, raised a permissible inference of negligence on the part of defendants, and that the burden was on defendants to go forward with evidence explaining the presence of the cow and to establish that they exercised reasonable care under the circumstances to prevent the cow from getting on the highway. This instruction amounts to a statement that defendants were negligent as a matter of law because they violated the closed range statute by the mere fact that their cow was on the highway. Such an instruction misstates the law and the trial court was correct in refusing to give it.

ORS 607.510, the closed range statute, makes it unlawful to permit an animal to run upon that part of the Coast Highway in question.[2] The Supreme Court has previously construed this statute as a proscription against *negligently permitting* livestock to run. *Parker v. Reter,* 234 Or

---

[2] ORS 607.510 provides, in part:

"No person shall allow cattle, horses, mules, sheep, goats, swine, or other livestock of any kind, to run at large, be pastured, staked or tethered upon the following state highways:

544, 283 P2d 93 (1963). The statute requires plaintiff to show that a person having control over the animal was negligent in allowing the animal to be at large. *Id.*

Notwithstanding the court's directive in *Parker,* plaintiff argues that since the statute's purpose is to insure that cattle do not stray on highways, the mere presence of cattle should raise a permissible inference of negligence on part of defendants. Plaintiff bases this argument on *Barnum v. Williams,* 264 Or 71, 504 P2d 122 (1972), wherein the Supreme Court stated that violation of a motor vehicle operation statute creates a presumption of negligence and places the burden on the violator to provide evidence that, although he violated the statute, he nevertheless was acting reasonably. *Id.* However, the *Barnum* rule, which shifts the burden of proof to defendant, obviously cannot be applied to a statute which provides ordinary negligence rather than a legislatively imposed special standard as the standard of care, since the statute is not proved to have been violated until plaintiff proves that defendant was negligent.

Plaintiff attempts to circumvent *Parker* by suggesting that the *Parker* court held only that the closed range statute imposes liability for negligence rather than liability without fault and that the court did not undertake to decide the appropriate evidentiary inference to be drawn in a case involving violation of such a statute. However, to do as plaintiff suggests, that is, draw the inference that defendants are negligent because their cattle were on the highway, is the same as saying that the closed range statute is violated by the mere presence of the cattle on the highway and thus that the mere presence of cattle constitutes negligence as a matter of law unless defendants show they acted reasonably. The closed range statute, as interpreted by the *Parker* court, clearly forbids such a result. Therefore, the trial court did not err in refusing to give plaintiff's instruction.

---

"(1) That part of the Oregon Coast Highway, State Highway No. 9, extending from the north boundary of Tillamook County to the south boundary of Lane County."

" * * * * * *."

■ ■ Plaintiff also argues that this was an appropriate case for the trial court to give an instruction on res ipsa loquitur. Res ipsa would properly apply if no conclusion could be drawn from the fact a cow escaped from a pasture other than that the owner was negligent. *Mayor v. Dowsett,* 240 Or 196, 400 P2d 234 (1965); *Powell v. Moore,* 228 Or 255, 265-66, 364 P2d 1094 (1961). Cases in other jurisdictions go both ways on whether res ipsa loquitur should apply to cases involving animals on the highway. We believe the better view is that the mere presence of the animal at large is not enough to establish an inference that the owner was negligent in the manner in which he confined it, since a cow can escape from even an adequate enclosure. *See e.g. Wilson v. Rule,* 169 Kan 296, 219 P2d 690 (1950); *Dungan v. Hart,* 107 Ohio App 431, 159 NE 2d 903 (1958); *Akin v. Berkshire,* 85 NM 425, 512 P2d 1261 (1973); *Rice v. Turner,* 191 Va 601, 62 SE 2d 24 (1950); *Moon v. Johnstone,* 47 Tenn App 208, 337 SW 2d 464 (1960); *Brauner v. Peterson,* 16 Wash App 531, 557 P2d 359 (1976); *but see contra e.g. Nuclear Corp. of America v. Lang,* 337 F Supp 914 (DC Neb 1972); *Shepard v. Smith,* 74 Idaho 459, 263 P2d 985 (1953).

Finally, plaintiff assigns as error the court's following instruction on lookout:

> "I instruct you that it is the continuing duty of a driver of a motor vehicle to keep and maintain a reasonable lookout for other vehicles, or persons, *or animals* on the streets or highways. A 'reasonable lookout' means such as would be maintained by a reasonably prudent person under the same or similar circumstances. In determining this question you should take into consideration the extent or degree of danger reasonably to be expected. A person does not comply with the duty to keep a reasonable lookout by simply looking and not seeing that which is plainly visible and which would have been seen by a reasonably prudent person under the same or similar circumstances."

At trial plaintiff excepted on the ground that the court, by inserting some language of its own dealing with the duty of plaintiff to see an animal, imposed a higher duty on plaintiff than required and made a comment on the evidence that was unfair to plaintiff.

■ ■ A motorist's duty is to keep such a lookout as would be maintained by a reasonably prudent person in the same

or similar circumstances. *See, e.g. Phillips, Gdn. v. Creighton, Adm.,* 211 Or 645, 316 P2d 302 (1957). By adding the word "animal," the court merely related the law to the facts of the case but did not alter plaintiff's duty or make a comment on the evidence. An error might have been made if the court had simply instructed the jury that plaintiff had a "duty * * * to maintain a lookout for animals," since plaintiff had no duty to keep a special lookout for animals unless under similar circumstances such a lookout would be maintained by a reasonably prudent person. *See Ginter v. Handy,* 244 Or 449, 419 P2d 21 (1966). But here the court stated that plaintiff's duty was to "maintain a *reasonable* lookout for * * *" and then listed such objects as might be expected to be on a road, including animals. The court explained that "reasonable lookout" means such lookout as would be maintained by a reasonably prudent person under the same or similar circumstances. Therefore, the instruction correctly informed the jury that plaintiff should have seen the animal only if a reasonably prudent person would have done so that night.

Affirmed.